JUDGE ABRAMS

25 CV 02409

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────x

Jane Doe Esq.
                Plaintiff,

                                      EX PARTE MOTION
    -against-                  To Proceed Anonymously/ Under Pseudonym
                                      Fed. R. Civ. P. 10(a)

THE LEGAL AID SOCIETY
                Defendant
──────────────────────────────x

    Upon the annexed proposed "Anonymously/ Under Pseudonym" version of the Plaintiff's complaint and the "non anonymous version" of the Plaintiff's compliant, the Affirmation and Memorandum of Law of Pro se Plaintiff, Jane Doe Esq., dated March 24, 2025, the Plaintiff seeks leave of The United States District Court of the Southern District of New York, located at 500 Pearl Street, New York, N.Y. 10007 to file the instant *Ex Parte* motion seeking an Order;

I. Pursuant to Federal Rule of Civil Procedure 10(a) and *Sealed Plaintiff*, 537 F.3d at 189 permitting Plaintiff to file the complaint and proceed anonymously using a pseudonym and with necessary redactions to protect her identity, subject to the Defendant's right to seek a modification on notice to the Plaintiff as the case progresses, on the grounds that the *Sealed Plaintiff* factors weigh in favor of permitting the Plaintiff to proceed anonymously using a pseudonym and redactions, at least at the initial stages of the case, and

II. Directing the Defendant to maintain the confidentiality of Plaintiff's identity by using only the pseudonym "Jane Doe" in all its filings, including all exhibits in which her name appears and to redact any filings that might identify Plaintiff in order to maintain Plaintiff's anonymity, with the right for Defendant to seek a modification on notice to the Plaintiff as the case progresses, and

III. Restricting electronic access to all of Plaintiff's pleadings to a "case-participant only" basis until thirty days after the instant motion is determined by the Court, and

IV. Restricting electronic access to all of Plaintiff's and Defendant's pleadings to a "case-participant only" basis with the right for Defendant to seek a modification on notice to the Plaintiff as the case progresses, and

V. Permitting the Plaintiff to continue to use pseudonyms in her complaint for the various individuals that play a role in the complaint narrative and directing the Plaintiff to serve the Defendant with a list of the real names of those individuals simultaneous with serving the complaint and directing the Defendant not to electronically disseminate that list to any party other then their counsel.

VI. Any other relief the Court deems just and proper.

Dated: March 24, 2025

*Jane Doe Esq.*
*Pro Se* Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

                     Plaintiff,        Affirmation & Memorandum of Law
                                             In Support of
                                             EX PARTE MOTION
     -against-                       To Proceed Anonymously/ Under Pseudonym
                                             Fed. R. Civ. P. 10(a)

THE LEGAL AID SOCIETY
                     Defendant
_____x

                 ESQ., an attorney admitted to practice law in the Courts of the State of New York, affirms under penalty of perjury;

1. She is the Plaintiff in this action and appears Pro se.

2. She has practiced Law in the New York State since September 1990 in the Legal Services Sector in the areas of Criminal Defense, Family Law, Integrated Domestic Violence Law, and most recently Housing Law.

3. She is married for 27 years, and has three daughters with her husband.

4. She is aware she is not entitled to nor does she seek the "special solitude" normally afforded to a pro se litigant.

5. She repeats the facts stated in paragraphs 9-17 in the annexed complaint for basic background information concerning her employment with The Legal Aid Society, and this Court's consideration of the *Sealed Plaintiff* factors as discussed more specifically below.

6. Plaintiff repeats the facts stated 18 – 47, and 48-112 in the complaint and submits them for the Courts consideration of the *Sealed Plaintiff* factors as discussed more specifically below.

3

7. In the main the Plaintiff's case alleges that at a time when she entered into a contractual agreement with the Legal Aid Society to guarantee her specified tangible terms, conditions and benefits of her employment that were designed to facilitate her efforts in obtaining new employment, the LAS Senior Management Official, with a documented history of discrimination against the Plaintiff, threatened to interfere with and alter those rights through his acts of discrimination. Upon prompt notice to LAS General Counsel of that threat to interference with and to alter those rights, General Counsel encouraged, facilitated and otherwise took no action to stop the LAS Senior Management official from following through with his threats in numerous instances. The combined discriminatory actions of the Las Senior Management Official and LAS General Counsel, complained of in the Plaintiff's complaint caused her to loose the career advancing position, and suffer extreme and far reaching reputation damage with the prospective employer who had/has voluminous contacts in the Legal Service industry, among other significant damages.

8. She submits this Affirmation and Memorandum of Law in Support of the relief requested in her *Ex parte* motion.

## *Sealed Plaintiff* Factors Weigh In Favor Of Permitting The Plaintiff To Proceed Anonymously Using A Pseudonym And Redactions At Least At The Initial Stages Of The Case.

### Factor #1: Whether the dispute involves highly sensitive matters of a personal nature

9. Plaintiff's complaint alleges a long-lasting campaign of quid pro quo sexual harassment, and retaliation by a Senior Management Official against her that lasted between January 2015 through June 2020 and resumed in February 2023 to April 2024 (the later time period being the discriminatory acts subject to the instant complaint and the former time period being necessary context to understand the gravity of the current charges).

4

10. The Plaintiff alleges that the historic acts of quid pro quo sexual harassment involved the following but are not limited to;

[i] isolated encounters in the Plaintiff's office after hours initiated by the Senior Management Official where he would stand or sit very neat the Plaintiff and reach or point at things that facilitated him making contact with the Plaintiff's chest area with his arm, gaze into the Plaintiff's eyes for extended periods of time and simultaneously slow stroke his face or fore arm with his hand, use a sexualized tone of voice with sexualized sighs (ie., hmmmmm, ahhhhhh), refer to the Plaintiff as "we" "our", tell the Plaintiff he "likes when they talk to each other" intimately, direct the Plaintiff to not cross her arms around her breast area when he was in her office after hours (thus giving him a better view of her breast area at a time when she had her suit jacket off and was in her suit blouse), and tell the Plaintiff that she is the only staff attorney that he spends as much time with as he does)

[ii] Pressuring the Plaintiff to initiate physical sexual activity with the Senior Management Official when he would come to the Plaintiff's office after hours several nights a week,

[iii] intense public focus on the Plaintiff amongst staff that facilitated LAS Burrough wide false rumors that he and the Plaintiff were romantically and sexually linked,

[iv] false representation to senior management and staff that he and the Plaintiff were romantically and sexually linked,

[v] actively facilitating a false narrative from 2015 throughout 2019 throughout the entire Legal Aid Society that he and the Plaintiff were romantically and sexually linked.

11. Plaintiff alleges that the historic acts of retaliation involved were;

[i] violence against the Plaintiff on March 24, 2016 (shouting at the Plaintiff, posturing to grab her and drag her out of her office, kicking her door to prevent her from closing it after he refused to leave the doorway and stop shouting at her, refusing to remove his foot from her door for an extended period of time when she was trying to shut her door).

[ii] in an effort to cover up his violence telling violent lies to other staff and senior management that the Plaintiff was locked in her office on March 24, 2016 trying to hurt herself,

[iii] falsely telling staff and senior management that the Plaintiff texts him at 3 am,

[iv] falsely telling staff and senior management that the Plaintiff's husband is going to Divorce her,

[v] falsely telling senior management that he does not want communications with the Plaintiff at times when he was initiating and engaging in communications with the Plaintiff.

5

12. The Plaintiff alleges and has put forth credible evidence in her complaint that during these time periods she repeatedly objected to the Senior Management Official's behavior both to him personally and to the highest management levels of the Legal Aid Society. Resulting in a total of four written complaints the Plaintiff made to the highest level of Legal Aid Society management. Of the four complaints there where two official investigations one by a private law firm and one by Legal Aid Society Employee Relations department. The complaint process did not stop the Senior Management Official's discriminatory behavior against the Plaintiff.

13. At all times LAS senior management either ignored, gaslit, undermined, knowingly falsely denied or retaliated against the Plaintiff for her complaints about the Senior Management Official's discriminatory behavior towards her. All this time Senior Management continued to be promoted and receive salary increases (resulting in his being listed on multiple tax years the LAS IRS 990 form for top 10 income earners). On the other hand to accomplish the LAS Senior Management Official's continued climb in the organization the Legal Aid Society boxed the Plaintiff in to her staff attorney position, and excluded her from working groups, and denied her several specialty unit positions she applied for from 2020 to 2022 so as not to restrict the Senior Management Official from Promotional Assignments that would require his direct contact with the Plaintiff should she be given the position. In other words punishing the Plaintiff for complaining about the behavior of the Senior Management Official regardless of the Legal Aid Society's knowledge of the veracity of her complaints. *Please see* the texts of then Deputy in Attorney in Charge and now the Attorney in Charge of CDP Burrough Office #1, paragraph #47 on pages 28-29 of the complaint.

14. The combination of the Senior Management Official's long-lasting and far-reaching discriminatory behavior and Senior Management's repertoire of responses to the Plaintiff's written

6

complaints (up through the facts alleged in this complaint) has spun a web of "victimization identity" for the Plaintiff that is evident in the documentary email evidence that mainly forms the basis of many of the causes of action in the complaint. "Victimization identity" is the antithesis to the Plaintiff's professional "warrior" identity that she and thousands of Legal Service clients she has and continues to represent in critical matters involving liberty, access to their children/family, and stable housing indigent, identify her with. It is important for the Public to have confidence that Legal Services Lawyers have their client's back and can pay attention to their representation in critical life matters free from distraction of being discriminated from their employer and the torture endured when complaining about the discrimination.

15. For all the reasons set forth in the Plaintiff's complaint which alleges facts that are a highly sensitive and of an extremely personal nature, especially in the context of the Plaintiff's career role as a Legal Service Attorney, factor one weighs in favor of the anonymity requested in the Plaintiff's motion.

### Factor #2 & #3 : Whether identification poses a risk of mental harm to Plaintiff or innocent non-parties and whether identification presents other harms.

16. Consistent with facts alleged for Factor#1 the identification of the Plaintiff's name to the facts alleged in the complaint, most of which are the first-hand emails from the Defendant, will cause mental harm to the Plaintiff's former and current Legal Service clients because it casts the Plaintiff in the role of victim and burdened with the distractions of the unnecessary discriminatory behaviors of the Legal Aid Society. A role that is the antithesis to how the Plaintiff's Legal Service client's have viewed and view and trust her with the most critical legal matters in their lives.

7

17. The Plaintiff represented a voluminous amount of clients during her employment at the Legal Aid Society. Many of which were facing very serious jail time for violent felony charges on indicted matters. The Plaintiff's hearing and trial litigation record during this time is extensive and effective. It is anticipated that the Legal Aid Society would prefer the Plaintiff proceed anonymously for these reasons of protecting the confidence of Legal Aid Society clients in the stellar and effective representation they provided them through the Plaintiff's lawyering and not causing them mental harm by the narrative being litigated and the Defendant's dishonest defense attack tactics against the Plaintiff to the instant complaint as demonstrated in their EEOC affidavits.

18. For these reasons the Court should determine that factor #2 weighs in favor of the anonymity requested in the Plaintiff's motion.

### Factor #5: Whether the suit challenges action of the Government

19. Although the Legal Aid Society of New York City is technically a private non-for-profit it is intrinsically involved with Federal and State funding to provide the Federal and State constitutional rights to counsel in a variety of its practice areas for the entire city of New York, (ie., Criminal, Juvenile proceedings, Integrated Domestic Violence, Criminal & Juvenile Appeals, Housing). It is New York City's primary provider for these services since 1966. It employs over 2000 staff and has multiple offices spread out through the five boroughs. It is too big to fail and the public's perception is that it is a governmental entity. As such the Legal Aid Society is akin to the government in that "suits against the government involve no injury to the Government's reputation" because the Government isn't going away. The Public reaction to the Plaintiff's law suit will have no impact on the funding the Legal Aid Society receives from the government to run

8

its Criminal Division operations. This significantly distinguishes the Legal Aid Society from a private defendant.

20. Additionally, since the plaintiff presumably represents a minority interest, and may be subject to stigmatization by bringing this suit, and there is arguably public interest in vindication of the plaintiff's rights. Since actions challenging the government have historically been granted anonymity relief in, the Court must consider that this suit against the Legal Aid Society falls within the objectives of factor #5.

21. For these reasons the Court should determine that factor #5 weighs in favor of the anonymity requested in the Plaintiff's motion.

## **Factor #6 Whether the Defendant's are prejudice by allowing the Plaintiff to proceed anonymously.**

22. The Defendant is already aware of Plaintiff's identity, and is in possession of 95% of the documents that the Plaintiff sites in her complaint which were incorporated by reference. The Defendant will have an uninhibited opportunity to litigate and/or engage in settlement negotiations this matter regardless of whether Plaintiff's identity is publicly disclosed.

23. Other than the need to make redactions and take measures not to disclose plaintiff's identity, the Defendant will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers.

24. Allowing Plaintiff to proceed anonymously would not disadvantage the Defendant, at least at the initial stages of litigation, including settlement, and discovery. Plaintiff's anonymity would not make it more difficult to obtain witnesses and witness testimony since the allegations in the complaint consist of current allegations that relate **solely** to the written communications between five parties at various times between February 27 to April 24, 2023 and February 22 to 26, 2024,

9

(ie., Plaintiff, General Counsel Rosenberg, Senior Management Official, Prospective Employer, and Supervisors #2, and #3), and a total of four phone calls between the Plaintiff and Senior Management Official, General Counsel Rosenberg, and Prospective Employer between February 27 to April 10, 2024. Furthermore, the past history of complaints of discrimination allegations and findings referred to for context in the complaint all relate to the written records in possession of the Defendant.

25. The Legal Aid Society has possession of all the documents the Plaintiff refers to in her complaint, which have been incorporated by reference. Regardless the Plaintiff will provide a copy of all the documents that are incorporated by reference to the Legal Aid Society within 10 days of serving the complaint.

26. For these reasons the Court should determine that factor #6 weighs in favor of the anonymity requested in the Plaintiff's motion.

**Factor # 7 Whether the Plaintiff's identity has been kept confidential.**

27. The Plaintiff has kept her identity confidential from the public in this matter. For these reasons the Court should determine that factor #7 weighs in favor of the anonymity requested in the Plaintiff's motion.

**Factor #8 Whether the public's interest in the litigation is furthered by requiring the Plaintiff to disclose her identity.**

28. While the workplace discrimination issues the Plaintiff is complaining of are of the type the public has interest in, it is more important for the Public to know the Plaintiff's job role/function at the Legal Aid Society with respect to the longlasting discrimination and retaliation she endured by the Legal Aid Society during her performance of that public function. It is that role/function that would have more meaning to the public then the Plaintiff's name.

29. For the reasons stated in factors 1,2,3 & & 7, and the added factor of the Legal Aid Society's longstanding and pervasive history of retaliation against the Plaintiff for engagement in protected activity, **it is more than likely that the Plaintiff will not pursue this action if anonymity is not granted**. Clearly the public interest would be thwarted if disclosure of the Plaintiff's name would cause the Plaintiff not to pursue the action.

30. For these reasons the Court should determine that factor #8 weighs in favor of the anonymity requested in the Plaintiff's motion.

**Factor #10 Whether there are other methods of protecting the Plaintiff's confidentiality**

31. While the Plaintiff seeks alternative mechanisms for protecting the privacy interests of others identified in the complaint narrative those mechanisms will not address the Plaintiff's main concern with regard to maintaining her anonymity in connection with this complaint. Alternative mechanisms for protecting confidentially will not achieve that.

32. For these reasons the Court should determine that factor #10 weighs in favor of the anonymity requested in the Plaintiff's motion.

*Sealed Plaintiff Analysis*

33. Based on the forgoing the Plaintiff's interest in anonymity outweighs both the public interest in disclosure and any prejudice to the defendant. The Court must grant the Plaintiff's motion to file her complaint under a pseudonym, and maintain anonymity, at least at the initial stages of the litigation subject to the Defendant's right to move to amend on notice to the Plaintiff.

### Restricting electronic access to "participant only" at the initial stages of the case

34. **The Plaintiff requests a Restriction on electronic access to all of Plaintiff's pleadings to a "case-participant only" basis until thirty days after the instant motion is determined by the Court so the Plaintiff can make the determination whether to proceed with the complaint if her application to proceed anonymously is denied, at least in the initial stages of the proceedings.**

35. Under circumstances where a wide range of Public Policy concerns exist in current times regarding the far-reaching effects of the electronic dissemination of matters/information, the Plaintiff's interest in confidentiality of her complaint and this motion for the time period requested, (so she can make an important decision on whether to proceed should her application be denied by this Court), outweighs both the public interest in disclosure and any prejudice to the defendant at this initial juncture in the proceedings.

36. Should the Plaintiff's instant motion be granted the Plaintiff requests restricting electronic access to all of Plaintiff's and Defendant's pleadings to a "case-participant only" basis with the right for Defendant to seek a modification on notice to the Plaintiff as the case progresses.

37. Based on the Plaintiff's experience with the Legal Aid Society, specifically as highlighted in the Plaintiff's sixth cause of action in the complaint (Post-employment Retaliation), the Legal Aid Society has intentionally or at the very least with gross negligence unlawfully, electronically disseminated the Plaintiff's confidential employment records to the EEOC and to the Senior Management Official. Likewise, LAS has made intentionally false and disparaging statements about the Plaintiff in it EEOC Position statement. By restricting electronic access to a case participant basis only at the initial phases of the case the Plaintiff would have an opportunity to

seek appropriate relief from the Court to stop Legal Aid Society's electronic dissemination of unauthorized confidential documents and matters.

38. In addition to above, because there are so many emails and other documents that were incorporated into the complaint by reference, there are many other persons referred to or cc'd in those documents and emails other than the main players in the Plaintiff's complaint narrative. It is the Plaintiff's intention to respect their privacy interests. It is not her intention to suppress their identity from the Legal Aid Society. By restricting electronic access to a case participant basis only at the initial phases of the case the Plaintiff would have an opportunity to seek appropriate relief from the Court to stop Legal Aid Society's electronic dissemination of unredacted matters intended to be redacted by this Court's order.

39. The Plaintiff's requests to restrict electronic access to "participant only" at the initial stages of the case outweighs both the public interest in disclosure and any prejudice to the defendant at this initial juncture in the proceedings.

**Pseudonyms in Complaint for Various Individuals**

40. The Plaintiff requests to continue to use pseudonyms in her complaint for the various individuals that play a role in the complaint narrative to protect their privacy interests.

41. Although the Legal Aid Society knows who the pseudonyms are referring to in each instance due to the volume of the communications between the parties over the controversy, the Plaintiff will serve the Defendant with a list of the real names of those individuals simultaneous with serving the complaint on the Defendant.

## **Memorandum of Law**

## **PLAINTIFF'S REQUESTS FOR ANONYMITY, REDACTIONS, AND OTHER ALTERNATIVE MECHANISMS FOR REQUESTING CONFIDENTIALITY OUTWEIGHS BOTH THE PUBLIC INTEREST IN DISCLOSURE AND ANY PREJUDICE TO THE DEFENDANT**

The Plaintiff moves this court for an order permitting her to file her complaint and proceed anonymously using a pseudonym and with necessary redactions to protect her identity, subject to the Defendant's right to seek a modification on notice to the Plaintiff as the case progresses, and a period of restricted electronic access to "case participant only." Plaintiff's interest in anonymity outweighs both the public interest in disclosure and any prejudice to the defendant, at least at the initial stages of the litigation. The Court must grant the Plaintiff's motion in its entirety as well as any other relief the Court deems just and proper.

*Standard of Review*

Federal Rule of Civil Procedure 10(a) requires a complaint to "name all the parties." Fed. R. Civ. P. 10(a). Sometimes, however, using a parties real name to pursue litigation could impair the very rights the person seeks to protect, thus courts have permitted individuals to proceed under pseudonyms when privacy rights are at issue. *See, e.g., Smith v. Doe,* 538 U.S. 84 (2003) In *Sealed Plaintiff,* the Second Circuit adopted the Ninth Circuit's approach regarding the use of pseudonyms and alias in pleadings, namely that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs (1) prejudice to the opposing party and (2) the public's interest in knowing the party's identity." 537 F.3d at 189 (quoting *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000)). When determining whether to permit a plaintiff to maintain an action under a pseudonym,

the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant. *Id.*

When considering a plaintiff's request to proceed anonymously, a court must balance "the plaintiff's interest in anonymity ... against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff*, 537 F.3d at 189. The Second Circuit has set forth a non-exhaustive list of ten factors to guide courts in balancing these interests. *Id.* at 189–90. A district court considering a request to proceed anonymously need not "list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191.

### *Factor #1 Nature of the Litigation*

The first *Sealed Plaintiff* factor deals with whether the litigation implicates highly sensitive or personal matters. Courts have found allegations of several instances of sexual harassment to be "highly sensitive and of an extremely personal nature...." *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019). Courts have found that allegations involving continued instances of sexual harassment and unwarranted conduct that continue after objections to cease the harassing activity and refusal to adhere to the harasser's whims lead to retaliatory actions are highly sensitive and of an extremely personal nature. *See Trooper 1 v New York State Police* 22-CV-893 (E.D. New York, June 9, 2022)

### *Factor #2 Whether the identification poses risk of retaliatory physical or mental harm to Plaintiff or Innocent Third Parties*

The relevant inquiry is "whether disclosure of the plaintiff's name in the course of the lawsuit would 'uniquely' cause harm and 'how grave the resultant harm would prove to be.' " *Branca,*

2022 WL 2713543, at *2 (citing *Rapp*, 537 F. Supp. 3d at 528-29). A "plaintiff must establish with sufficient specificity the incremental injury that would result from disclosure of her identity." *Freydin*, 2021 WL 4991731, at *3 (citing *Doe v. Gong Xi Fa Cai, Inc.*, No. 19 Civ. 2678 (RA), 2019 WL 3034793, at *2 (**S.D.N.Y.** July 10, 2019)).

*Factor #3 Whether identification presents other harms*

The third factor asks "whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Sealed Plaintiff*, 537 F.3d at 190.

The third *Sealed Plaintiff* factor assesses "whether identification presents other harms and the likely severity of those harms ..." *Id.* Courts in this District have held that speculative claims of physical or mental harms are insufficient to bolster a request for anonymity. *See Michael v. Bloomberg L.P.*, No. 14-2657, 2015 WL 585592 (**S.D.N.Y.** Feb. 11, 2015).

*Factor #5 Whether the suit challenges the actions of the government*

Courts generally permit anonymity involving suits against the government because they "involve no injury to the Government's reputation," *North Jersey*, 2012 WL 5899331 at 7, and because "the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably public interest in vindication of [the plaintiff's rights]. *R.F.M. v Nielsen*, 365 F. Supp. 3d 350, 371-72 (S.D.N.Y. 2019).

*Factor #6   Whether the Defendants are prejudiced by allowing the Plaintiff to proceed anonymously.*

Factor six asks "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190.

16

Case 1:25-cv-02409-RA    Document 4    Filed 03/24/25    Page 17 of 18

Courts have held "Where, as here, 'Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly,' there is little risk of prejudice." *Colgate Univ.*, No. 15 Civ. 1069, 2016 WL 1448829, at *3. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers."; *see also Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988).

*Factor #7 Whether the Plaintiff's identity has been kept confidential*

Courts have held that the "preservation of confidentiality factor weighed in favor of the plaintiff's anonymity where the general public was not aware of her identity even though the defendants were." *Doe v. Gong Xi Fa Cai, Inc.*, No. 19 Civ. 2678 (RA), 2019 WL 3034793, (S.D.N.Y. July 10, 2019 *citing Solera Capital LLC*, 2019 WL 1437520, at *7

*Factor #8 whether the public's interest in the litigation is furthered by requiring the Plaintiff to disclose her identity.*

Courts have held that, "Although, 'the public has a right to know who is using the courts' especially when issues of significant public concern are raised, *Comcast*, 2021 WL 694556, at *2, this public interest is thwarted if disclosure would cause the plaintiffs not to pursue the action. *see Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006)

*Factor #10 Whether there are other methods for protecting Plaintiff's confidentiality*

Courts have held that "Because the identity of the Doe Children generally is the concern here, rather than certain specific information that could be redacted or sealed, this factor favors anonymity." *Jane Doe v Salina* 2024 WL 1259362 (E.D. New York March 25, 2024)

*Conclusion*

17

Applying the standards Courts apply to factors 1, 2, 3, 5, 6, 7, 8, and 10 with the facts affirmed in the Plaintiff's Affirmation this Court must find Plaintiff's interest in anonymity outweighs both the public interest in disclosure and any prejudice to the defendant, at least at the initial stages of the litigation. The Court must grant the Plaintiff's motion in its entirety as well as any other relief the Court deems just and proper.

WHEREFORE the Plaintiff requests this Court grant the relief requested in the Plaintiff's *ex parte* motion as well as any other relief the Court deems just and proper.

Dated: March 24, 2025
Rockville Centre, NY 11570

/s/ Jane Doe Esq.
Jane Doe Esq.