UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————x

JANE DOE ESQ.,

                       Plaintiff,

          -against-

     THE LEGAL AID SOCIETY

                 Defendant

—————————————————————————————x

No. 25-cv-02409 [RA]

**NOTICE OF APPEAL**

   NOTICE IS HEREBY GIVEN that Jane Doe Esq., the pro se Plaintiff in the above-named case,

hereby appeals to the United States Court of Appeals for the Second Circuit from each and every

part of an Order [ECF 41] entered on March 31, 2026 by this Court, denying the Plaintiff the right

to proceed in this case anonymously by pseudonym and for other related relief. A copy of the order

is attached hereto.

Dated, April 23, 2026

                                        Respectfully submitted,
                                         */s/ Jane Doe Esq.,*
                                       Jane Doe Esq., Pro Se Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE ESQ.,

                    Plaintiff,

          v.

THE LEGAL AID SOCIETY,

                    Defendant.

---

25-CV-2409 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Jane Doe, Esq. brings this action against Defendant Legal Aid Society ("LAS"), asserting claims of discrimination on the basis of sex, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law. Dkt. No. 1 ("Compl.") ¶ 1. Before the Court is Plaintiff's motion to proceed anonymously in this action with respect to herself, several non-parties, and LAS Borough Offices, *see* Dkt. No. 15 ("Privacy Motion" or "Privacy Mot."); Dkt. No. 16 ("Pl.'s Decl."); Dkt. No. 17 ("Pl.'s Br."); Dkt. No. 35 ("Pl.'s Repl."), to maintain a Reference List under seal that includes identifiers of non-parties in the Complaint, and to strike portions of LAS's Opposition along with portions of a supporting declaration and several exhibits. *See* Privacy Mot.; Pl.'s Repl. at 1–3. For the reasons that follow, the motion is denied in its entirety.

## BACKGROUND

The following facts are drawn from the Complaint, unless otherwise noted, and assumed to be true for the purposes of this motion. *See Doe v. Alexander*, 2025 WL 1532414, at *1 (S.D.N.Y. May 28, 2025) (citing *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020)). Over a decade ago, Plaintiff, then a staff attorney at LAS, began experiencing what she characterizes as a "long-lasting campaign of quid pro quo sexual harassment, and retaliation," *see* Pl.'s Decl. ¶ 5, against her by Christopher Pisciotta, the Attorney-in-Charge of the Staten Island Criminal Defense Office—or as Plaintiff refers to him, the Senior Managing Officer ("SMO"). *See* Dkt. No. 32 ("Rosenberg Decl."), Ex. G ("Banks Affidavit") ¶ 4. She claims her rebuffs were met with alleged retaliation by Pisciotta who would threaten discipline, among

other acts. Pl.'s Decl. ¶¶ 6–7. Following these encounters, Plaintiff maintains that rumors that she and Pisciotta were having an affair abounded at the Staten Island office, *id.* ¶ 6, which she attempted to dispel by reporting his actions to management at LAS to no avail. *Id.* ¶¶ 8–10. LAS tells a different story—one that identifies Plaintiff rather than Pisciotta as the source of the interpersonal dispute. *See generally* Rosenberg Decl. Beginning in 2017, when Plaintiff was transferred from the Staten Island Office to the Queens County Office, LAS alleges that she began sending "unwanted text and email communications to" Pisciotta, and that it had to reprimand her on three different occasions. *See id.* ¶¶ 5–9.

In his declaration, LAS's General Counsel Scott Rosenberg asserts that Plaintiff was eventually terminated from her position for insubordination on November 7, 2022. *See* Rosenberg Decl. ¶ 10, *id.*, Ex. D ("Notice of Termination"); Dkt. No. 36 ("Pl.'s Second Decl.") ¶¶ 4–6. Despite Plaintiff's representations that she was never terminated, the parties agreed to a Separation Agreement on February 6, 2023, which placed her on Unpaid Administrative Leave until December 31, 2023. Rosenberg Decl. ¶ 16; Pl.'s Second Decl. ¶¶ 9, 23, *id.* Ex. A. By the beginning of 2023, Plaintiff began looking for a new position and that March secured an interview with Scott Banks at the Legal Aid Society of Nassau County for a family court supervisory position, *see* Compl. ¶ 1; Rosenberg Decl. ¶ 18, which required her to provide professional references from her supervisors at LAS, including Pisciotta. *See* Compl. ¶¶ 48–49.

Hoping to thwart a negative reference, Plaintiff claims that she set up a call with Pisciotta to encourage him to dodge any communications from Banks. *Id.* ¶ 53. During the call, she alleges, Pisciotta sexually harassed her and threatened to divulge that she was "on leave, looking for work, and working with general counsel," *id.*, and that afterwards, Pisciotta called Banks back and followed up on his threat to tell him several "negative things" about her. *See id.* ¶ 75. Plaintiff repeatedly sought information from Rosenberg about how the call went, and enraged by his responses, *see* Compl. ¶¶ 66–82, describes feeling "the great sense of crushing fear that not only was [Pisciotta] intensely focused on her but that he now had the written backing of the mighty LEGAL AID SOCIETY OF NEW YORK CITY to quid pro quo sexually harass the Plaintiff indefinitely either on the job with the prospective employer or on other legal service jobs." *Id.* ¶ 73.

Later that year, Plaintiff filed "a charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC")." *Id.* ¶ 19; Compl. ¶ 8; *id.*, Ex. A. She then commenced this case on March 24, 2025, simultaneously filing an *ex parte* motion seeking to proceed anonymously as "Jane Doe Esq.," and allowing her to continue referring to non-parties and borough offices by pseudonyms. Dkt. No. 4 at 2. This Court granted that motion temporarily, ordering her to "file a renewed—public—motion to continue to proceed anonymously," Dkt. No. 6, which she did, *see* Privacy Mot., along with a motion to strike portions of LAS's Opposition. *See* Pl.'s Repl. at 2–3.

## DISCUSSION

### I.        Motion to Proceed Anonymously

Plaintiff urges the Court to permit her to proceed anonymously. Defendant opposes the motion, arguing that there is a presumption against anonymous or pseudonymous pleadings and that Plaintiff has failed to demonstrate a substantial countervailing privacy interest. *See* Def.'s Opp'n at 6–7. The Court denies Plaintiff's motion.

### A.  Legal Standard

Federal Rule of Civil Procedure 10(a) requires that a complaint "name all the parties." Fed. R. Civ. P. 10(a). "A district court has discretion to grant an exception to the general requirement of disclosure of the names of parties to allow a party to proceed under a pseudonym." *Doe v. Alexander*, 2025 WL 784913, at *1 (S.D.N.Y. Mar. 12, 2025) ("*Alexander I*").[1] "[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). The Second Circuit has set forth ten non-exhaustive factors for courts to balance when ruling on a motion to proceed anonymously. These are:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure particularly in light of his or her age;
(5) whether the suit is challenging the actions of the government or that of private parties;
(6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of the prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
(7) whether the plaintiff's identity has thus far been kept confidential;
(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;
(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189–90. "[A] district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191 n.4.

## B. Application

### 1. Factor One: Matters of a Highly Sensitive and Personal Nature

The first factor requires consideration of whether the litigation involves matters of a highly sensitive and personal nature. This case involves allegations of sexual harassment, which undoubtedly qualify. *Doe v. Skyline Autos., Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019). Thus, while this factor weighs in Plaintiff's favor, courts in this District have routinely held that allegations of sexual harassment and assault alone "are not sufficient to entitle a plaintiff to proceed under a pseudonym." *Doe v. Alexander ("Alexander II")*, 2025 WL 1126617, at *2 (S.D.N.Y. Apr. 16, 2025); *see also, e.g.*, *Doe v. Combs ("Combs I")*, 2025 WL 950685, at *2 (S.D.N.Y. Mar. 28, 2025); *Alexander I*, 2025 WL 784913, at *2; *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022*); Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020).

### 2. Factors Two and Three: Risk of Physical Retaliation or Mental Harm and Likelihood and Severity of the Harm

The second and third factors consider the potential harm to a plaintiff from disclosure of her identity. Specifically, they examine "whether disclosure of the plaintiff's name in the course of the lawsuit

4

would uniquely cause harm and how grave the resultant harm would prove to be." *Alexander I*, 2025 WL 784913, at \*3. A plaintiff must therefore "establish with sufficient specificity the incremental injury that would result from disclosure of her identity." *Id.* When supported by credible allegations, courts have found sufficient arguments that disclosure of a plaintiff's identity was not warranted where it would "put her at risk of retaliation from her abusive former partner," or where "there is a history of substantiated prior action directed at plaintiff[] from defendant[]." *Doe v. Townes*, 2020 WL 2395159, at \*4 (S.D.N.Y. May 12, 2020). Generally, "prior knowledge of a plaintiff's identity by the defendants weighs against granting a motion to proceed anonymously." *Id.*

Here, Plaintiff presents no evidence of any existing or potential threats or intimidation that she would experience should her identity be revealed. She claims only that revealing her identity would cause her and her former clients at LAS emotional harm and embarrassment. *See* Pl.'s Br. at 6–8. As to the allegation that it will pose a risk of mental harm to her and her clients, it is conclusory at best. Moreover, "a plaintiff must allege more than public humiliation—she must provide corroboration from medical professionals that detail the risk to plaintiff." *Doe v. Alexander ("Alexander III")*, 2025 WL 1532414, at \*3 (S.D.N.Y. May 28, 2025). Such evidence "must detail how revealing [P]laintiff's name in particular, as opposed to the trauma that could occur through reliving the experience through litigation, would cause harm." *Id.* Plaintiff provides no such evidence, and as such, the Court cannot "speculate about the nature and severity of any mental injury from disclosure." *Id.* Furthermore, Plaintiff's identity is well known to LAS, as she left behind a years-long trail of complaints and correspondence with Rosenberg and Pisciotta. *See Townes*, 2020 WL 2395159, at \*5 ("[T]he Defendant and third parties are already aware of Plaintiff's identity and Plaintiff's fear of reputational harm is not sufficient."). Therefore, the second and third factors weigh against granting Plaintiff's motion.

### 3. Factor Four: Vulnerability and Age of Plaintiff

The fourth *Sealed Plaintiff* factor considers "whether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . particularly in light of [her] age." *Sealed Plaintiff*, 537 F.3d at 190. Plaintiff, here, is an adult and does not claim that she was a minor or otherwise particularly vulnerable at the time of

5

the alleged harassment. *See Doe v. Combs ("Combs II")*, 2025 WL 722790, at \*3 (S.D.N.Y. Mar. 6, 2025) ("Courts have been readier to protect the privacy interests of minors in legal proceedings than of adults."). This factor thus also weighs against granting Plaintiff's motion. *See Alexander I*, 2025 WL 784913, at \*3; *Alexander II*, 2025 WL 1126617, at \*3; *Combs I*, 2025 WL 950685, at \*4.

### 4. Factor Five: Government or Private Action

The Court must also consider "whether the suit . . . challeng[es] the actions of the government or that of private parties." *Sealed Plaintiff*, 537 F.3d at 190. A plaintiff's interest in proceeding anonymously is stronger where "a lawsuit challenges governmental actions, actors, or policies." *Doe v. Solera Cap. LLC*, 2019 WL 1437520, at \*6 (S.D.N.Y. Mar. 31, 2019), *vacated on other grounds*, 2020 WL 11027792 (S.D.N.Y. Dec. 16, 2020). LAS, despite being one of the largest providers of legal services in New York and accepting government grants, remains a private organization, and this factor too weighs against granting Plaintiff's motion.

### 5. Factor Six: Prejudice to Defendant

Factor six examines "whether the defendant is prejudiced by allowing the plaintiff to press h[er] claims anonymously." *Sealed Plaintiff*, 537 F.3d at 190. "In assessing whether such prejudice exists, courts examine the reputational damage to defendants, difficulties in conducting discovery, and fundamental fairness of proceeding anonymously." *Combs I*, 2025 WL 950685, at \*5.

Plaintiff argues that LAS is aware of her true identity, and as such, will be able to litigate the matter regardless of whether her identity is shared with the public. *See* Pl.'s Br. at 10. LAS's only inconvenience, she maintains, would be "the need to make redactions and take measures not to disclose plaintiff's identity," which she acknowledges would create challenges for LAS during discovery. Pl.'s Decl. ¶ 22. While it is true that LAS may only be marginally inconvenienced were the Court to grant Plaintiff's request, it is insufficient to tilt this factor in her favor, because, even where the defendant knows the plaintiff's identity, "concealment of plaintiff's identity from the public can still hamper defendants' ability to conduct discovery." *Doe v. Freydin*, 2021 WL 4991731, at \*3 (S.D.N.Y. Oct. 27, 2021). "This is especially true in a case . . . that happened over ten years ago[,] where evidence and witnesses may be difficult to find."

6

*Alexander I*, 2025 WL 784913, at *3. The events that gave rise to Plaintiff's Privacy Motion stem from allegations that began over a decade ago. Compl. ¶¶ 28–30. Furthermore, LAS is right to note that when claims involve sexual harassment or assault, "the reputational damage risk to Defendant is high and fairness requires that plaintiff be prepared to stand behind her charges publicly." *Townes*, 2020 WL 2395159, at *6; *see also Skyline Autos.*, 375 F. Supp. 3d at 407 ("Allowing Plaintiff to proceed anonymously would disadvantage Defendants at all stages of litigation, including settlement, discovery, and trial."). Accordingly, this factor weighs against granting Plaintiff's motion.

### 6. Factor Seven: Status of Confidentiality in the Proceedings

The Court next considers whether Plaintiff's identity has been kept confidential. As discussed above, and as Plaintiff acknowledges, her identity is known by LAS leadership and former colleagues. *See, e.g.*, Compl. ¶¶ 18, 26, 61. She nonetheless maintains that she has kept her identity concealed from the general public. Pl.'s Br. at 12; Pl.'s Decl. ¶ 25. While that may be true, LAS points to Plaintiff's inclusion of her real name and contact information in her EEOC complaint, Def.'s Opp'n at 15, which courts have found to weigh against granting a motion to proceed anonymously. *See Skyline Autos.*, 375 F. Supp. 3d at 407–08 ("Plaintiff['s] EEOC complaint," contained "her name and contact information," and as a result, "because of the disclosure of Plaintiff's identity . . . through various administrative proceedings, as well as the lack of evidence corroborating the alleged risk of harm and retaliation from the general public, the seventh factor weighs against allowing Plaintiff to proceed anonymously."). Here too, the seventh factor weighs against granting Plaintiff's motion to proceed anonymously.

### 7. Factors Eight and Nine: The Public Interest

The eighth factor considers "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose h[er] identity." *Sealed Plaintiff*, 537 F.3d at 190. "Courts have put weight on the right of the public to know the identity of the litigants as well as on the interest of the accused to be able publicly to confront the accuser." *Branca*, 2022 WL 2713543, at *2. Courts therefore require "something more . . . to rebut the presumption of public access, at least in cases involving adult sexual assault, and that something more frequently has to be evidence of real (and not conclusory) harm that is substantial and that

7

will flow directly from and is directly linked to disclosure of the party's name." *Id.* Plaintiff's arguments that the public interest is not served by disclosure are conclusory at best and "it does not follow that the public has an interest in maintaining the anonymity of *every* person who alleges sexual assault or other misconduct of a highly personal nature." *Branca*, 2022 WL 2713543, at *2. "Otherwise, this factor would, in effect, heavily favor anonymity in every sexual assault case." *Alexander I*, 2025 WL 784913, at *4. This factor favors Defendant.

The ninth factor does as well. It asks "whether, because of the purely legal nature of the issues presented . . . , there is an atypically weak public interest in knowing the litigants' identities." *Sealed Plaintiff*, 537 F.3d at 190. Plaintiff's claims here are factual in nature, "and the public interest in sexual assault and discrimination is very high. Thus, due to the nature of the case, the eighth and ninth factors weigh against allowing the Plaintiff to proceed anonymously." *Skyline Autos.*, 375 F. Supp. 3d at 408.

### 8. Factor Ten: Alternative Protections

Finally, the tenth factor considers "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff*, 537 F.3d at 190. "Here, Plaintiff can seek less drastic remedies than blanket anonymity, such as redactions to protect particularly sensitive information or a protective order." *Combs I*, 2025 WL 950685, at *6; *see also Alexander I*, 2025 WL 784913, at *5 (similar). Plaintiff's primary argument is that since her "identity is the main concern[,] there are no alternative mechanisms to protecting her identity other than granting her motion to continue to proceed anonymously." Pl.'s Br. at 13. Without more, and since her identity is already known to the parties, this factor weighs against Plaintiff.

\* \* \*

In sum, factor one weighs in favor of Plaintiff, while the remaining nine weigh against granting her motion to proceed anonymously. Considering all the factors, the Court finds that she has not "sufficiently demonstrated that her interest in anonymity outweighs the prejudice to Defendant[] and the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Alexander I*, 2025 WL 784913, at *5.

## II.    Motion to Seal

Plaintiff next moves to redact information related to non-parties, *see* Pl.'s Br. at 1, as well as the "names of specified courts and LAS offices, because their disclosure will reveal her identity by association." Pl.'s Repl. at 1–2. She offers to submit a "Reference List," under seal, identifying the name of each individual. Pl.'s Br. at 16. Defendant opposes. This motion is also denied.

### A.  Legal Standard

When evaluating whether to permit redaction of a party's filings, this Court applies the three-step test set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). First, the Court determines whether the documents at issue are "judicial documents." *Id.* at 119. A judicial document or record is "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016). If the documents are deemed judicial in nature, "a common law presumption of access attaches," and the Court then "consider[s] the weight of that presumption." *Lugosch*, 435 F.3d at 119. This weight is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014). The Second Circuit has clarified that "the presumption of access is at its zenith" when the documents "determine litigants' substantive rights," *Bernstein*, 814 F.3d at 142, "and is weaker where the documents play only a negligible role in the performance of Article III duties." *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022). Finally, the Court balances the weight of the presumption of access with the "competing considerations against" it, denying access "when competing interests outweigh the presumption." *Erie Cnty.*, 763 F.3d at 239.

### B.  Application

The first factor is not in dispute. The documents Plaintiff seeks to redact, namely her Complaint, and all future filings including LAS's anticipated motion to dismiss and related supporting declarations and exhibits, are plainly judicial. *See Sylvania v. Ledvance LLC*, 2021 WL 412241, at *1 (S.D.N.Y. Feb. 5,

2021); *see also* Pl.'s Br. at 14–15; Def.'s Opp'n at 18–19. The Second Circuit has held that the weight given to the presumption of access "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. The redactions Plaintiff seeks here would be applied to all documents filed throughout the litigation. Pl.'s Br. at 1. These documents play a significant role "in the performance of Article III functions," and furthermore, should this litigation proceed to trial, these redactions would apply to material introduced as evidence at trial, which is particularly disfavored. *United States v. Amodeo*, 71 F.3d 1044, 1049–50 (2d Cir. 1995).

Once the weight of the presumption is determined, a court must evaluate countervailing factors. *Id.* at 1050. Plaintiff argues that one such factor should be the privacy interests of innocent non-parties. Pl.'s Br. at 17. The Second Circuit affords great weight to the protection of non-parties' information. *See, e.g.*, *In re Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990) ("The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."). Plaintiff admits, however, that the non-parties at issue here "play a significant role in the complaint narrative." Pl.'s Br. at 18. Pisciotta, for example, is the individual that Plaintiff alleges sexually harassed her for the better part of a decade. His identity is not only critical to her Title VII claims against LAS, but he is not himself seeking anonymity. *See* Compl. ¶¶ 51, 121. The main thrust of her argument is that revealing the identities of non-parties would "expose [her] identity to numerous staff at LAS and the Courts." Pl.'s Br. at 18. However, since the Court is denying Plaintiff's motion to proceed anonymously and because her identity is already known to LAS, her argument that obscuring non-parties' identities would reveal hers fails.

It is true that Plaintiff seeks to publicly file all documents, redacting only the names of non-parties and borough offices, and to file a Reference List under seal, revealing the identifiers used throughout the filings. Although this is more narrowly tailored than a request to seal the entirety of the documents without filing a publicly redacted version, *see e.g. Olson*, 29 F.4th at 93, Plaintiff has not done enough to overcome the presumption of public access. Plaintiff's motion to redact the identities of non-parties is thus denied.

10

### III.    Motion to Strike

Finally, Plaintiff moves to strike various statements in LAS's Opposition to her Privacy Motion, in its supporting declaration, and several exhibits in their entirety, claiming that LAS made irrelevant, false, and libelous statements. Pl.'s Repl. at 2–3; Pl.'s Second Decl. ¶¶ 10–30. Defendant opposes, arguing that the Court should deny Plaintiff's request to strike as the excerpts she seeks to omit "constitute relevant and necessary background for the Court to understand the nature of Plaintiff's request for anonymity." Dkt. No. 37 ("Def.'s Letter"). The Court again agrees with Defendant.

#### A.  Legal Standard

Separate from a court's authority to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," pursuant to Federal Rule of Civil Procedure 12(f), courts also have an "inherent power" to strike materials outside the pleadings that are "abusive or otherwise improper." *Lively v. Wayfarer Studios LLC ("Lively I")*, 2025 WL 1410702, at *1 (S.D.N.Y. May 15, 2025). Plaintiff also invokes the Court's authority pursuant to Rule 11(b), which mandates that an attorney submitting papers to the Court does not do so "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that any "factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," and that any denials of factual contentions are similarly warranted. Fed. R. Civ. P. 11(b); *see* Pl.'s Second Decl. ¶¶ 4, 10, 16, 19, 22, 24–25, 27–30.

#### B.  Application

Plaintiff takes aim at pages 3 to 5 and paragraph E of LAS's Opposition as well as the supporting paragraphs in the Rosenberg Declaration, *see* Pl.'s Repl. at 3; Rosenberg Decl. ¶¶ 4, 5–16, 18, and four of the Rosenberg Declaration's exhibits. *See* Rosenberg Decl., Ex. C ("Final Warning Notice"); Notice of Termination; Rosenberg Decl., Ex. F ("Separation Agreement"); Banks Affidavit. The challenged material in LAS's Opposition details the events leading up to Plaintiff's eventual departure from LAS, including a final warning notice sent to her, which documented several incidents of alleged "insubordination and

11

inappropriate bullying behavior engaged in by Plaintiff," including against Pisciotta. Def.'s Opp'n at 3. The brief goes on to discuss Plaintiff's termination on November 7, 2022 for insubordination, and the Separation Agreement that followed. *Id.* at 3–5. The challenged paragraphs in the Rosenberg Declaration support those assertions. *See* Rosenberg Decl. ¶¶ 4–10. Paragraphs 11–16 detail the negotiations between Plaintiff, her union representatives, and LAS over the Separation Agreement. *See id.* ¶¶ 11–16. She also takes issue with LAS's assertion that her allegations "stem from her attempt in early 2023 to obtain a job reference from Pisciotta in his personal capacity and to script Pisciotta's response to an anticipated call from [a prospective employer]." *Id.* ¶ 18. Finally, she challenges the inclusion of Paragraph E in Defendant's brief in opposition, which asserts that she "filed a charge of sexual harassment and retaliation" with the EEOC in her own name. Def.'s Opp'n at 6.

In seeking to strike the challenged material, she first invokes the Court's inherent power to strike, separate and apart from any statutory authority. Although the Second Circuit has recognized courts' inherent power to strike documents that "gratify private spite or promote public scandal," *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019), it has provided few guideposts other than asking whether the materials at issue are "abusive or otherwise improper under the circumstances." *Outlaw v. City of New York*, 2024 WL 4825955, at *3 (S.D.N.Y. Nov. 19, 2024).

Plaintiff characterizes the challenged statements as "blatant lies," with "no relevance to the Court's determination of the Plaintiff's Privacy Motion." Pl.'s Repl. at 2. The Court disagrees. The documents stricken in the two *Lively v. Wayfarer Studios LLC* cases, on which Plaintiff relies, were "irrelevant to any issue before th[e] Court," and advanced "inflammatory accusations . . . transparently invit[ing] a press uproar." *Lively I*, 2025 WL 1410702, at *2 (S.D.N.Y. May 15, 2025); *see Lively v. Wayfarer Studios LLC ("Lively II")*, 2025 WL 2298247, at *1–2. By contrast, each challenged passage or document at issue here is relevant to Plaintiff's Privacy Motion and the disposition of this matter as a whole. They provide background on the parties involved and context for the events that feature in and ultimately gave rise to the motion, and matter itself.

Accordingly, Plaintiff's motion to strike pursuant to the Court's inherent authority is denied. To

the extent Plaintiff challenges the same material pursuant to Rule 11(b), that effort also fails. There is no evidence that LAS has submitted any motions or papers for "any improper purpose," and all factual contentions appear to have ample support, as evidenced by the Rosenberg Declaration and attached exhibits. *See* Fed. R. Civ. P. 11(b); *see de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003).

## CONCLUSION

Accordingly, Plaintiff's motion to proceed anonymously, the motion to seal, and the motion to strike portions of LAS's Opposition are denied in their entirety. Given Plaintiff's representation that she does not intend to pursue this action if these motions are denied, *see* Pl.'s Repl. at 16, within thirty (30) days of the filing of this Memorandum Opinion & Order, Plaintiff shall propose next steps in this action.

The Clerk of Court is respectfully directed to close the motion pending at Docket Number 15.

SO ORDERED.

Dated:    March 31, 2026
          New York, New York

_____
Ronnie Abrams
United States District Judge

13